UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MAPFRE TEPEYAC, SA, | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-05-1908 |
| | § | |
| ROBBINS MOTOR TRANSPORTATION, INC. | § | |
| *Defendant*. | § | |

## MEMORANDUM, RECOMMENDATION AND ORDER

The following motions are before the court in this cargo damage case: Robbins Motor Transportation, Inc.'s motion to dismiss pursuant to Rule 12(b)(6) and for summary judgment (Dkts. 55, 56); Mapfre Tepeyac, S.A.'s motion for summary judgment (Dkt. 58); Robbins Motor Transportation, Inc.'s motion to dismiss for forum non conveniens (Dkt. 56); and counsel for Robbins Motor Transportation, Inc.'s opposed motion to withdraw (Dkt. 54). Having considered the record and law, this court recommends granting Robbins's motion for summary judgment; denying Mapfre's motion for summary judgment; and granting Robbins's forum non conveniens motion. The court conditionally grants the motion to withdraw.

## 1.   Robbins's 12(b)(6) Motion

Mapfre has asserted causes of action against Robbins under the Carmack Amendment and common law negligent bailment.[1] Robbins's motion pursuant to Rule 12(b)(6) is based

---

[1]   Mapfre's complaint asserts numerous negligence theories, including *res ipsa loquitur*, as well as breach of contract. Based on its representations in its briefing to the court, Mapfre is deemed to have abandoned its common law claims other than negligent bailment. *See*

on its contention that it did not issue a through bill of lading for the cargo at issue, and thus the Carmack Amendment does not apply.  At the same time, Robbins argues that Mapfre's common law claim for negligent bailment is preempted by the Carmack Amendment. Robbins further contends that Mexican law applies to Mapfre's negligence claim.

Robbins has filed its 12(b)(6) motion concurrently with a motion for summary judgment asserting the same arguments.  Both sides have presented evidence for the court's consideration.  Rule 12(b) provides that if the parties present and the court considers matters outside the pleading on a motion under Rule 12(b)(6), then "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Because the parties have had sufficient notice and opportunity to present evidence as required by Federal Rule of Civil Procedure 56(c), the court converts Robbins's motion to dismiss to a motion for summary judgment and considers the parties' submissions in connection with its summary judgment analysis below.  *See Geraghty and Miller, Inc. v. Conoco Inc.*, 234 F.3d 917, 923 (5th Cir. 2000).

**2.**	**Motions for Summary Judgment**

**A.**	**Summary Judgment Standards**

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The  party

---

Mapfre's response to Robbins's motion to dismiss (Dkt. 64), at 4; Mapfre's motion for summary judgment (Dkt. 58), at 2.

moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

If the movant meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)). If the evidence presented to rebut the summary judgment is not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255.

In sum, in order to avoid summary judgment, Robbins must create a fact issue on at least one element of Mapfre's cause of action. In order to be awarded summary judgment, Robbins must negate at least one element of Mapfre's cause of action as a matter of law.

B.    **Undisputed Facts**

This case arises out of damage incurred during shipment to an injection molding machine owned by Rosti Mexico, S.A. de C.V., a Mexican corporation. Mapfre, a Mexican

insurance company, paid Rosti's claim for $82,823.95 for damage to the injection molding machine. Mapfre, under assignment from Rosti and under subrogation from Uni-Trade Forwarding, L.C., is seeking reimbursement from Robbins for its loss of $82,823.95 and for its attorney's fees.[2]

In the summer of 2004, Rosti hired Uni-Trade, a Texas corporation, as a freight forwarder to arrange for delivery of the equipment from New Braunfels, Texas to Zapopan, Mexico. Guadalupe Dominguez,[3] an independent broker working out of Monterrey, Mexico, contacted C & J Motor Express,[4] a Laredo company working under contract to Louisiana Transportation, Inc., about handling the New Braunfels to Laredo leg of the shipment. Dominguez informed Carlos Barrios, co-owner of C & J, that Robbins had trailers in the vicinity of New Braunfels that C & J could use. C & J loaded the equipment onto two flat bed trailers owned by Robbins in New Braunfels and delivered it to Laredo, Texas. The cargo was in good condition at the time of loading in New Braunfels and was delivered to

---

[2]     The Carmack Amendment does not authorize recovery of attorney's fees. *Accura Sys., Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 876 (5th Cir. 1996). Under Texas law, a party may recover attorney's fees only if provided for by statute or by contract. *Gulf States Utilities Co. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002). No Texas statute provides for recovery of attorney's fees in a negligence action. *Id.* at 568. Therefore, Mapfre's claim for attorney's fees should be dismissed regardless of the court's decision on summary judgment.

[3]     Luis Hinojosa of Uni-Trade testified that he arranged for the carriage with Dominguez, who in turn was in contact with Larry Vidaurri of Robbins. Hinojosa Dep. at 110.

[4]     Apparently, C & J actually subcontracted to yet another carrier, Cardenas, to carry the load. Neither C & J or Cardenas are parties to this lawsuit. To avoid further confusion, the court refers to C & J as the carrier for the domestic leg of the shipment.

4

Laredo in good condition.  According to Barrios, C & J billed Uni-Trade for its services, as directed by Dominguez.

The cargo was then picked up by Transportes Gordillo, a Mexican company, for delivery to its final destination in Zapopan, Mexico.  The yard at which Transportes Gordillo picked up the trailers is also used by a Mexican company called Transportes Perez.  It is a matter of dispute whether Robbins or Uni-Trade hired Perez or Gordillo.[5]  The cargo remained on Robbins's trailers throughout its journey; it was not unloaded or transferred at any time.  The cargo arrived damaged in Zapopan.  It is undisputed that the damage occurred during the Mexican leg of the journey, although the record contains no evidence regarding the nature of the accident causing the damage.

Vidaurri testified that Robbins offers "seamless service" for transport of shipments into Mexico.  However, he denied that Robbins provided such service for the cargo in this case.  The only documentation reflecting any communication between Uni-Trade and Robbins is a July 15 e-mail from Hinojosa to Vidaurri confirming the location of the cargo for pick up.  Vidaurri never responded to Hinojosa's e-mail or sent any paperwork to Uni-Trade.   Nor did Robbins send Uni-Trade an invoice.

The record contains two documents identified as bills of lading.  Hinojosa identified a document titled "remision" that he called a bill of lading for the Mexican leg of the

---

[5]     The record does contain an invoice from Transportes Gordillo listing Robbins as the client. Vidaurri testified that Javier Gordillo, the owner of Transportes Gordillo, told him this was a mistake and was issued only because the Transportes Gordillo dispatcher saw the Robbins name on the trailers.

5

journey.[6]  Barrios identified another document as a bill of lading issued by Uni-Trade covering the shipment from New Braunfels to Laredo.[7]  It is undisputed that Robbins did not issue a written bill of lading for any segment of the shipment.

### C.      The Carmack Amendment Claim

The Carmack Amendment, codified at 49 U.S.C. § 14706(a), imposes liability on certain carriers and freight forwarders for the loss of goods in transit.[8]  Section 14706(a) provides that an interstate carrier is "liable to the person entitled to recover under a receipt or bill of lading . . . for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading . . ..  Failure to issue a receipt or bill of lading does not affect the liability of a carrier."  A "through bill of lading" is one which covers the entire shipment from the point of origin to destination, even though

---

[6]      Hinojosa Dep., at 10, Exhibit 18.  This document, entirely in Spanish, identifies the shipper as "MEGATRANS Del Norte, S.C.," with a business address in "Colombia, Nuevo Leon." It also identifies the destination as the Rosti facility in Zapopan, Mexico.  However, it does not state the origin of the shipment.

[7]      Barrios Dep., at 50, Exhibit 3.

[8]      A shipper establishes a *prima facie* case against a carrier under the Carmack Amendment when it shows delivery to the carrier in good condition, arrival at its destination in damaged condition, and the amount of damages.  *Man Roland, Inc. v. Kreitz Motor Exp., Inc.*, 438 F.3d 476, 479 (5th Cir. 2006).  The *prima facie* case creates a rebuttable presumption of negligence.  The carrier can overcome this presumption by showing that it was free from negligence and that the damage was due to the inherent nature of the goods or attributable to an act of God, public enemy, the shipper, or public authority.  *Id.*

different carriers may be used to perform various segments of the shipment. *Commercial Union Ins. Co. v. Sea Harvest Seafood Co*., 251 F.3d 1294, 1302 (10th Cir. 2001); *Altadis USA, Inc. ex rel. Fireman's Fund Ins. Co. v. Sea Star Line, LLC*, 458 F.3d 1288, 1289 (11th Cir. 2006).

By its express terms, § 14706(a)(1)(C) imposes carrier liability for shipments originating in the United States for delivery in an adjacent foreign country *only* where the entire carriage is governed by a single through bill of lading. *Temple Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1030 (5th Cir. 2000).[9]   Determining whether a shipment is governed by a through bill of lading is a question of fact.[10]   *American Road Serv. Co. v. Consolidated Rail Corp.*, 348 F.3d 565, 568 (6th Cir. 2003); *Capitol Converting Equip.,*  965 F.2d at 394.

Mapfre bases its Carmack Amendment claim on Hinojosa's testimony that he expected Robbins to arrange door-to-door service for the cargo. While that may well have been Uni-Trade's understanding, the record is clear that no through bill of lading governing the shipment was issued by Robbins, or anyone else for that matter. The record contains a document that has been identified by Barrios as a bill of lading for the shipment from New

---

[9]   A carrier held liable to a shipper under a through bill of lading may seek compensation from another carrier responsible for the loss. *Temple Steel*, 211 F.3d at 1030.

[10]   There is no jury demand in this case. In a non-jury trial, the judge is the ultimate trier of fact. In such cases, the court  may grant summary judgment where a trial would not enhance the court's ability to draw inferences and conclusions. *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978); *In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991).

Braunfels to Laredo,[11] and another that has been identified by Hinojosa as a bill of lading for the Mexican leg of the shipment.[12]  The record does not contain a bill of lading covering the entire shipment from New Braunfels to Zapopan.  Nor does the record contain any other document issued by Robbins concerning this shipment.

A bill of lading is, by definition, a document.  A bill of lading is "a *document* acknowledging the receipt of goods by a carrier or by the shipper's agent and the contract for the transportation of those goods; a *document* that indicates the receipt of goods for shipment and that is issued by a person engaged in the business of transporting or forwarding goods." BLACK'S LAW DICTIONARY 176 (8th ed. 2004) (emphasis added).[13]  The parties have not

---

[11]     *See* Barrios Dep. Exhibit 3.

[12]     *See* Hinojosa Dep. Exhibit 18.

[13]     Black's Law Dictionary further provides the following annotation regarding a "bill of lading":

> A bill of lading may be regarded in three several aspects.  (1) It is a receipt given by the master of a ship acknowledging that the goods specified in the bill have been put on board; (2) it is the document [that] contains the terms of the contract for the carriage of the goods agreed upon between the shipper of the goods and the shipowner (whose agent the master of the ship is); and (3) it is a 'document of title' to the goods, of which it is the symbol.  It is by means of this document of title that the goods themselves may be dealt with by the owner of them while they are still on board ship and upon the high seas.  William R. Anson, *Principles of the Law of Contract* 380 (Arthur L. Corbin ed., 3d Am. ed. 1919).

*Id.  See also*, *Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 550 (J. O'Connor, concurring) ("A bill of lading is a form document prepared by the carrier, who presents it to the shipper on a take-it-or-leave-it basis"); *Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 142  (2d Cir. 1997) (explaining that an
(continued...)

cited, and the court has not found, any case in which a carrier was found liable under the Carmack Amendment for a loss that occurred in a foreign country where the shipment was not governed by a *written* through bill of lading.

Mapfre relies on the language in the Carmack Agreement that "[f]ailure to issue a receipt or bill of lading does not affect the liability of a carrier."[14]  There certainly is tension between this language and that of the preceding sentence, which permits Carmack  liability for U.S. shipments to an adjacent foreign country only "when transported under a through bill of lading."  49 U.S.C. § 14706(a)(1).  But the way to resolve that tension cannot be, as Mapfre would have it, to simply discard the requirement of a through bill of lading as though it were not part of the statute. Such a construction would violate the cardinal tenet of statutory construction that all parts of a statute must be given effect.  *See Kaltenbach v. Richards,* 464 F.3d 524, 528 (5th Cir. 2006).  These provisions can be harmonized by recognizing that the through bill of lading requirement is an exception to the general rule,

---

[13]        (...continued)
"instrument," such as a bill of lading, is a legal document); *Matter of Transport Clearings-Midwest, Inc.*, 26 B.R. 282, 287 n.10 (Bkrtcy. Mo. 1982) (equating a freight bill with a bill of lading, which is a written memorandum acknowledging receipt of goods).

[14]        49 U.S.C. § 14706(a)(1).  Mapfre cites *State of Texas v. Anderson, Clayton & Co.*, 92 F.2d 104, 106-07 (5th Cir. 1937) for the proposition that "in determining whether a particular movement of freight is interstate or intrastate or foreign commerce, the intention existing at the time the movement starts governs and fixes the character of the shipment."  In *Anderson, Clayton* the court expressly stated that the form of the bill of lading was not material.  *Id.* at 106.  However, that case did not involve a dispute over application of the Carmack Agreement, but was a dispute regarding applicable tariffs.  Moreover, there appeared to be no dispute in that case that the goods were shipped on a through bill of lading.  *See id.* at 105. In short, the 50-year old *Anderson, Clayton* decision is immaterial to this case.

9

applicable only to outbound U.S. shipments.  And even with respect to this category of shipments, the general rule that a particular carrier's liability is unaffected by its failure to issue a bill of lading would still apply, provided that there is a single through bill of lading governing the entire shipment.  In other words, intermediate carriers would remain unable to avoid liability by omitting bills of lading for their own segment of a shipment.  But absent a through bill of lading, there can be no liability under the Carmack Amendment for any carrier handling a U.S. shipment to an adjacent foreign country.

Because there is no genuine dispute that a through bill of lading was not issued in this case, Robbins is entitled to summary judgment on Mapfre's Carmack Amendment claim.

### D.    The Negligent Bailment Claim

It is generally the case that the Carmack Amendment preempts state law claims against interstate carriers.  *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 306-07 (5th Cir. 1993).  Because the Carmack Amendment does not apply in this case, Mapfre's common law negligence claim is not preempted by the statute. *See Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1362 (7th Cir. 1997) (considering merits of state law breach of contract claim where Carmack Agreement did not apply); *Capitol Converting Equip.,  Inc. v. LEP Transport, Inc.*, 965 F.2d 391, 394-95 (7th Cir. 1992) (same).  Thus, the court must determine whether summary judgment is warranted on other grounds.  Robbins argues that Mexican law governs  this claim.  Mapfre has moved for summary judgment on their

10

negligent bailment claim under Texas law, and has not responded to Robbins's arguments regarding application of Mexican law.

A federal court siting in diversity applies the choice of law rules of the forum state. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003). Texas courts follow the most significant relationship test of the Restatement (Second) of the Conflict of Laws when determining what law to apply to a tort claim. *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979); *S.A. De C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 989-90 (S.D. Tex. 2004). The Restatement identifies several principles underlying a choice of law determination: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971). In order to adhere to these principles, the court considers four factual matters to determine choice of law in a tort case: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties centered. *Id.* at § 145. The court evaluates these contacts in light of their relative importance in the context of the issue presented.

11

Based on the above standards and the facts of this case, the court concludes that Mexican law properly applies to Mapfre's negligence claim.  It is undisputed that the damage to the cargo occurred in Mexico.  It is also undisputed that the conduct causing the injury took place in Mexico.[15]  Mapfre is a Mexican company, as is the owner of the damaged goods, Rosti.  Robbins is a Pennsylvania corporation doing business in Texas.  There was no relationship between Mapfre and Robbins prior to this lawsuit.  The nature of the relationship between Uni-Trade and Robbins is a matter of dispute, but to the extent there was any relationship at all it was centered in Laredo, Texas where both companies do business.  While this case does have some relationship to Texas, the court finds that Mexico has the most significant relationship to the transaction and parties at issue in this case.

A determination that Mexican law applies requires summary judgment in favor of Robbins on Mapfre's Texas law negligent bailment claim.  *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 680 and n.26 (5th Cir. 2003) (a determination that Mexican law applies necessarily precludes application of Texas law, and is equivalent to a summary judgment dismissing the Texas state law claim).  As discussed below, this choice of law determination also leads to dismissal of Mapfre's negligence claim under the doctrine of forum non conveniens.

### 3.    Robbins's Forum Non Conveniens Motion

---

[15]    Mapfre has made no allegation that the damage was caused by improper loading by C & J in Texas, and states "the cargo was lost due to an accident which occurred during the possession of the goods by Robbins' subcontractor Gordillo." Mapfre's motion for summary judgment, at 12.

A.    <u>**Forum Non Conveniens Standards**</u>

The decision whether to grant or deny a motion to dismiss for forum non conveniens is a matter of discretion. *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379 (5th Cir. 2002).  The court's inquiry consists of four considerations:  (i) whether an alternative forum is available; (ii) whether the alternative forum is adequate; (iii) the weight of private interest factors; and (iv) the weight of public interest factors.  *Id.*  An alternative forum is available if "the entire case and all parties can come within the jurisdiction of that forum."  *Id.*  An alternative forum is adequate if "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court."  *Id*. at 379-80.

If the court finds that an adequate alternative forum is available, then the court weighs various private interest factors, including the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining the attendance of witnesses; the possibility of view of the premises, if appropriate; and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Vasquez*, 325 F.3d at 672.  If these private factors weigh in favor of dismissal, the court also considers relevant public interest factors, including administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum whose law governs the case; the avoidance of unnecessary conflict of laws problems or the application of foreign law; and

the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 673. Ordinarily, there is a strong presumption in favor of a plaintiff's choice of forum that may only be overcome where the private and public interest factors clearly point towards trial in the alternative forum. *Id.* at 672. The plaintiff's choice of forum is accorded less deference where the plaintiff is a resident of a foreign country. *Id.* The party seeking dismissal, in this case Robbins, bears the burden of proof on the forum non conveniens factors. *Id.*

### B.  Analysis of Forum Non Conveniens Factors

Robbins argues that Mexico is an available forum because it will consent to the jurisdiction of the Mexican courts. *See Seguros Comercial Americas S.A. de C.V. v. American President Lines, Ltd.*, 910 F. Supp. 1235, 1245 (S.D. Tex. 1995) (citing *Veba-Chemie A.G. v. M/V GETAFIX*, 711 F.2d 1243, 1245 (5th Cir. 1983)), *vacated on other grounds*, 105 F.3d 198 (5th Cir. 1996). Robbins further argues that Mexico is an adequate forum because Mapfre can recover damages under Mexican law for Robbins's negligence.

Mexico is an available alternative forum given Robbins's consent to jurisdiction. Mexico is also an adequate forum. In *Seguros*, relied upon by Robbins, the district court found that damages were available under Mexican law in a cargo damage case. Mapfre has not presented any authority to the contrary. The fact that Mexican law may be less favorable to Mapfre does not make Mexico an inadequate forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247-65 (1981).

It is unclear whether the cost of securing attendance of witnesses in this district will be greater than the costs that would be incurred were the trial in Mexico. The witnesses who have been deposed in this case all work in Laredo, a city bordering Mexico. There is also no indication that access to sources of proof has been a problem in this case; discovery is complete. At the same time, the application of Mexican law would make trial of the case in this forum more difficult, and would likely necessitate the hiring of experts in Mexican law at significant expense to both parties. Thus, the court finds that the private interest factors in total weigh in favor of dismissal.

The court is cognizant of the fact that this case has been pending for some time in this district, and motions to dismiss based on convenience generally must be made in a timely fashion. However, the focus of this case to date has been on Mapfre's Carmack Amendment claim. The court is only today recommending dismissal of that claim. Thus, the most compelling aspect of the forum non convenience argument, the application of Mexican law, has only now come to light. In addition, there is no indication that the progress made in developing the case for trial while it was pending in this forum will have to be repeated in order to prepare the case for trial in Mexico.

The public interest factors also weigh in favor of dismissal. While the facts related to the accident have largely been ignored by the parties because they were irrelevant to the Carmack Amendment claim, such facts will be relevant to a negligence claim. Those facts are all tied to Mexico. The accident took place in Mexico, while the goods were in the

15

custody of a Mexican carrier, and the damaged property belonged to a Mexican corporation. This negligence case clearly is of more interest to citizens of Mexico than those of Texas. In addition, Mexican courts are obviously more competent to make decisions on claims governed by Mexican law than this court.  In the end, the court must determine the forum "where trial will best serve the convenience of the parties and the ends of justice." *Seguros*, 910 F. Supp. at 1244.  That forum is Mexico.

The dismissal of this action based on forum non conveniens must be conditioned upon Robbins's consent to jurisdiction in Mexico, and this court shall retain jurisdiction over this case for the purpose of allowing Mapfre to return to this jurisdiction if the lawsuit becomes impossible to pursue in the Mexican forum. *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, at 675 (5th Cir. 2003).

**4.    Motion to Withdraw**

Counsel for defendant Robbins Motor Transportation, Inc. (Robbins) seeks to withdraw from representing Robbins in this case because Robbins has not paid its bills. Counsel's  motion states that his client objects to the withdrawal, but Robbins has not filed a separate objection.  Mapfre Tepeyac, S.A. (Mapfre) objects to the withdrawal primarily on the grounds that substitute counsel has not been named.

The court may permit withdrawal of counsel upon motion and under whatever conditions the court finds necessary to prevent delay.  *See* LOCAL R. S.D. TEX.. 83.2.  Where counsel seeks to voluntarily withdraw, as opposed to being discharged by the client, "it is

incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel, and that the withdrawal of counsel is for good cause." *Broughten v. Ross*, 634 F.2d 880, 882-83 (5th Cir. 1981).

Robbins's counsel has met the existing deadlines in the scheduling order in this case. Counsel's withdrawal will not leave Robbins in the lurch or unreasonably delay trial, particularly if the district court adopts this court's recommendations for dismissal. Under the circumstances, the court will not force counsel to continue representing Robbins without compensation.

Because a corporation cannot appear *pro se* in federal court, *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004), and Robbins likely cannot secure new counsel fast enough to meet the 10-day period for objecting to the recommendations contained in this memorandum and recommendation, or to respond to any objections by Mapfre, counsel's withdrawal will not be effective until after resolution of objections. Counsel remains responsible for lodging any appropriate objections and for responding to objections by Mapfre.[16]

---

[16]    If necessary, in the event the district court does not adopt the recommendations herein granting summary judgment, Robbins will be given time to retain new counsel prior to trial.

5.      **Conclusion**

For the reasons discussed above, the court recommends that Robbins's motions for summary judgment and for dismissal based on forum non conveniens (Dkts. 55, 56) be granted, and Mapfre's motion for summary judgment (Dkt. 58) be denied.

The court grants Robbins's counsel's motion to withdraw (Dkt.54) on the condition that the withdrawal will not take effect until after resolution of any objections to this Memorandum and Recommendation.

The parties have ten days from service of this Memorandum and Recommendation to file written objections.  Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error.  *See* FED. R. CIV. PRO. 72.

Signed at Houston, Texas on December 13, 2006.


Stephen Wm Smith
United States Magistrate Judge